UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DUSTIN LEE ARBUCKLE,

Plaintiff,

v.

C. FREY, RON NEAL, A. MYERS,

Defendants.

CAUSE NO. 3:26-CV-492-PPS-APR

OPINION AND ORDER

Dustin Lee Arbuckle, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Arbuckle, who is currently incarcerated at the Indiana State Prison (ISP), alleges he was placed in the "SMC shower" by Sgt. C. Frey on Friday, November 28, 2025. ECF 1 at 2. The SMC shower has a "big step you must step up to to get into the shower and or step down to to get out of." *Id.* It's supposed to have a slip proof mat on the floor, but at the time Arbuckle was placed there it didn't. After Arbuckle showered, he slipped and fell while getting out and fractured the fifth metacarpal of his left hand. He

screamed for help, but Sgt. Frey told him to be quiet because he didn't have time to deal with it. When Arbuckle insisted something was seriously wrong with his hand, Sgt. Frey responded, "I don't give a shit and that's what you get for filing grievances on [my] co-workers tryin' to get them in trouble." *Id*. Sgt. Frey told Arbuckle he knew there was a "hit" out on him and if he "thought my hand hurts, just wait." *Id*.

Arbuckle also alleges Sgt. Frey told him his food wasn't safe to eat that day. He says Sgt. Frey can be seen on camera "skipping me and feeding the other 2 inmates." *Id*. at 3. He came back with a tray minutes later and said, "Eat it, I dare you, you Fuckin' pussy!" *Id*. Arbuckle declined to eat the food on that tray. Instead, Arbuckle told Sgt. Frey that "he'd be reading about this for not getting me medical attention and spitting in my food." *Id*. Sgt. Frey responded that if a grievance was filed, Arbuckle would "never be safe again anywhere and to try him." *Id*. Sgt. Frey refused to help Arbuckle for the rest of the shift.

Arbuckle was escorted to medical by two lieutenants when the next shift arrived. A nurse immediately ordered x-rays; however, he was sent back to his cell without any further medical attention. His hand was "throbbing" all weekend long, but he wasn't given any pain medication despite asking for it repeatedly. *Id*. at 4. On Monday, December 1, 2025, three days after his injury occurred, an x-ray confirmed Arbuckle had fractured his metacarpal. When he went to get his vitals checked, he again saw R.N. Myers, whom he had seen the night of his injury. Arbuckle said, "I told you my hand was broke[n] & you made me go all weekend in pain with no aspirin, ice, splint, nothing, you have no heart." *Id*. R.N. Myers responded by telling him, "Your (sic) lucky

2

I even ordered x-rays for your dirty ass." *Id*. She told him if he wanted treatment, he needed to shut his mouth. Arbuckle "responded with a few words" and was kicked out of medical without further treatment. *Id*.

Arbuckle claims that, to this day, he hasn't received care for his hand.[1] He says his hand "aches constantly" and "sometimes goes numb." *Id*. at 6. He has filed several grievances and healthcare requests, but they haven't been answered. He claims he sent several requests and letters to Warden Ron Neal personally, advising him he's "received no treatment period" for his hand. *Id*. Arbuckle is suing Warden Ron Neal, Sgt. C. Frey, and R.N. A. Myers for monetary damages as well as to be "transferred to another facility." *Id*. at 7.

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also*

---

[1] The complaint was docketed on April 14, 2026.

*Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single

'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than mere "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotation marks omitted).

With regard to non-medical prison officials, they generally don't violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). While prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id.* (internal quotation marks and citations omitted). That said, "[a]n official's 'mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient.'" *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)).

Here, Arbuckle claims he fractured the fifth metacarpal on his left hand, which seems to be a serious medical condition. He claims Sgt. Frey refused to assist him in any way and prevented him from being seen by medical on the day of the injury despite his claims of pain. Although he doesn't indicate how long it was before the second shift arrived and he was taken to medical by different officers, I will give him the benefit of the inferences to which he is entitled at this stage of the proceedings and presume he remained in pain without receiving any medical care for at least several hours due to Sgt. Frey's actions. As such, he has stated a plausible Eighth Amendment claim against Sgt. Frey. *See, e.g., Eagan*, 987 F.3d at 694.[2]

Arbuckle also claims that, although he was given an x-ray on December 1, 2025, he has received no other medical care for his broken hand since then. He asserts that R.N. Myers was and is aware of his injury yet has repeatedly refused to provide him with any care, including pain medication. In fact, he claims she specifically told him to "stay in pain." ECF 1 at 4. Based on these allegations, he has sufficiently stated an Eighth Amendment claim against R.N. Myers. *See e.g., Goodloe*, 947 F.3d at 1031.

Finally, he claims he sent Warden Ron Neal several requests and two personal letters regarding his injury and the fact that he has received "no treatment period" for it, but he has failed to receive a response. ECF 1 at 6. While the fact that Warden Neal oversees the prison isn't sufficient to subject him to individual liability, *see, e.g., Burks v.*

---

[2] Additionally, Arbuckle speculates that Sgt. Frey tampered with his food tray on November 28, 2025. While I don't condone this alleged behavior, being deprived one meal doesn't violate the Eighth Amendment. *See, e.g., Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010) (finding that even missing seventeen meals over twenty-three days did not violate the Constitution because plaintiff "ha[d] not shown that missing his meals … caused serious harm or lasting detriment.").

*Raemisch*, 555 F.3d 592, 594–96 (7th Cir. 2009) (no general respondeat superior liability under 42 U.S.C. § 1983), I will give Arbuckle the benefit of all reasonable inferences at this early stage and presume Warden Neal had personal knowledge of the alleged complete lack of care. This is sufficient to state a claim as well. *See, e.g., Eagan*, 987 F.3d at 694. Moreover, because Arbuckle insists the hand injury is ongoing and that he still needs some type of care for it, he will be permitted to proceed on a claim for permanent injunctive relief against the Warden in his official capacity. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (warden of a correctional facility has both the authority and the responsibility to ensure inmates are provided with constitutionally adequate medical care); *see also Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right") (cleaned up)).

Arbuckle also appears to be alleging he was retaliated against. Under the First Amendment, an inmate can't be punished for engaging in certain kinds of speech. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). While these basic elements remain the same whether the plaintiff is a prisoner or a non-prisoner, the details of each element may depend on the

context. *Id*. In the prison context, written requests for interviews and/or grievances clearly constitute First Amendment protected activity. *Id*.; *see also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) ("A prisoner has a First Amendment right to make grievances about conditions of confinement."). That said, "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance." *Clark v. Reed*, 772 Fed. App'x 353, 355 (7th Cir. 2019) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (emphasis in original)). Additionally, not all actions alleged to be retaliatory are "actionable in and of themselves . . .." *Bridges*, 557 F.3d at 552. Rather, only "if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983." *Id*.

Arbuckle claims Sgt. Frey refused to assist him with his broken hand and prevented him from getting medical care because he had filed grievances against his co-workers. He doesn't provide any additional information about these grievances including who they were filed against or when. Even putting aside the vagueness of these allegations, I find it unnecessary to allow a First Amendment retaliation claim based on these facts because the underlying alleged retaliatory acts already state an Eighth Amendment claim as described above. Proceeding on different constitutional theories based on the same facts is redundant. *See Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017) (affirming dismissal of Eighth Amendment claim because the same facts comprised a more applicable First Amendment claim); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels");

and *Graham v. Connor*, 490 U.S. 386, 395 (1989) (analyzing allegations under the most "explicit textual source of constitutional protection").

There are additional allegations as well. Arbuckle further states, "[o]n November 28, 2025, I told Sgt. Frey he'd be reading about this for not getting me medical attention and spitting in my food." ECF 1 at 3. Sgt. Frey responded by stating Arbuckle would "never be safe again anywhere" if he filed a grievance against him. *Id*. These allegations don't state a retaliation claim because Arbuckle's threat to file a grievance doesn't constitute a protected activity. *Clark*, 772 F. App'x at 355 (threat to file a grievance isn't sufficient). Arbuckle does assert he filed a grievance against Sgt. Frey on December 15, 2025, but he doesn't plausibly allege he was subsequently subjected to an adverse action/deprivation as a result of that grievance. *Douglas*, 964 F.3d at 646. Thus, I find that Arbuckle hasn't stated any plausible retaliation claims.

In addition to the aforementioned claims, Arbuckle may be attempting to bring a failure to protect claim as well. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id*. (internal quotation marks, brackets, and citations omitted). Accordingly, when an

inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' [associated with mental health issues] does not necessarily correlate to a 'substantial risk'"). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of

10

meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Here, Arbuckle alleges Sgt. Frey told him he knows there is a "hit" out on him and that he would eventually get what he deserves. ECF 1 at 2. However, he doesn't claim he has ever been attacked or harmed. More importantly, a vague allegation about a possible future "hit" by numerous unidentified individuals is insufficient to put any of the defendants on notice of a substantial, credible, imminent, and specific threat to his safety. *See e.g., Gevas*, 798 F.3d at 481; *see also Klebanowski*, 540 F.3d at 639–40 (neither general expressions of fear nor prior attacks are sufficient); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content). Similarly, although Arbuckle claims Sgt. Frey told him he wouldn't be safe at ISP in general if he filed a grievance against him, his complaint doesn't allege he was ever attacked or that he has made anyone else aware of a specific and identifiable threat/concern.[3] *See e.g., Gevas*, 798 F.3d at 481; *see also Klebanowski*, 540 F.3d at 639–40. As such, Arbuckle hasn't stated any plausible failure to protect claims.

As a final matter, Arbuckle filed a separate motion for preliminary injunctive relief ten days after he filed his complaint. A preliminary injunction is a "very far-

---

[3] The December 15, 2025, grievance Arbuckle attaches to the complaint states that Sgt. Frey threatened his life by "refusing [him] medical treatment" for his hand injury and saying "Eat it I dare you" when he handed him a food tray. ECF 1-1 at 2. These allegations aren't sufficient to state a failure to protect claim because he admits he was taken to medical later that same day and that he only missed one meal due to the alleged tampering. *See, e.g., Gevas*, 798 F.3d at 481 (complaint must identify a "risk of serious harm").

11

reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[4] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be

---

[4] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, my ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

In his motion, Arbuckle states he has "serious mental health issues" and is not receiving any help for them because there are "no licensed mental health staff" at ISP. ECF 5 at 1. The claims in Arbuckle's complaint are wholly unrelated to these new allegations regarding his mental health, so he has no chance of success on the merits of such a claim in this lawsuit. *See Univ. of S. Ind.*, 43 F.4th at 791–92. Arbuckle also alleges a "certain group of officers here at ISP" are threatening to kill him or have him killed. ECF 5 at 2. He states, "[t]hey have put hits on my life with a 'certain' gang here." *Id*. He claims unnamed inmates try to stab him through the bars of his cell and throw bodily

13

waste at him "[e]verytime I come out of my cell" yet "the officers do nothing about it." *Id*.[5] He asks the court to transfer him to a new facility where he will be "safe and be able to get the help that I need with my mental health issues." *Id*. at 3. While these new allegations are admittedly troubling, they are impermissibly vague and don't provide the court or the defendants with a reasonable opportunity to assess them—claims that all officers and all inmates at ISP are threatening to kill him every day are overly generalized, imprecise, and implausible. *See Univ. of S. Ind.*, 43 F.4th at 791–92 (allegations related to a preliminary injunction are not analyzed in the same permissive manner as those in a complaint). Moreover, as set forth in detail above, Arbuckle's complaint doesn't state any plausible failure to protect claims, and he doesn't sufficiently explain how these new allegations against "certain officers" and "a certain gang" are related to the claims he has been allowed to proceed on here. *See Gevas*, 798 F.3d at 481 (complaint must identify an ongoing "specific, credible, and imminent risk of serious harm."); *see also Klebanowski*, 540 F.3d at 639–40 (general requests for help, expressions of fear, and even prior attacks aren't sufficient).[6]

Accordingly:

(1) Dustin Lee Arbuckle is GRANTED leave to proceed against Sgt. C. Frey in his

---

[5] These allegations are strikingly similar to those described in several recent motions for preliminary injunctive relief filed by other inmates at ISP. *See Henderson v. Arvin, et al.*, cause no. 3:26-CV-468-CCB-SJF (N.D. Ind. Apr. 8, 2026) at ECF 3; *Cordle v. Fleming*, cause no. 3:25-CV-335-APR (N.D. Ind. Apr. 18, 2025) at ECF 49; *Schwartz v. Warden*, cause no. 3:26-CV-604-GSL-JEM (N.D. Ind. May 6, 2026) at ECF 1.

[6] Of note, Arbuckle admits he is "currently in the segregation unit" away from the general population and in a separate cell from any other offender in the unit. ECF 5 at 2.

individual capacity for compensatory and punitive damages for denying him the ability to receive medical care for his broken hand on November 28, 2025, in violation of the Eighth Amendment;

(2) Dustin Lee Arbuckle is GRANTED leave to proceed against R.N. A. Myers in her individual capacity for compensatory and punitive damages for continually denying him medical care related to his broken hand beginning on November 28, 2025, in violation of the Eighth Amendment;

(3) Dustin Lee Arbuckle is GRANTED leave to proceed against Warden Ron Neal in his individual capacity for compensatory and punitive damages for being deliberately indifferent to that fact that Arbuckle repeatedly advised him he has not received any medical care related to his broken hand since November 28, 2025, in violation of the Eighth Amendment;

(4) Dustin Lee Arbuckle is GRANTED leave to proceed against Warden Ron Neal in his official capacity to ensure Arbuckle receives constitutionally adequate medical care for his broken hand in accordance with the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal and Sgt. C. Frey at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to

15

locate and serve process on) R.N. A. Myers at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(8) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(9) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal, Sgt. C. Frey, and R.N. A. Myers to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(10) DENIES the motion for preliminary injunctive relief (ECF 5).

SO ORDERED.

ENTERED: May 12, 2026.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT